# ROCKINGHAM,

## DECEMBER TERM, A. D. 1845.

---

## Marston, Ap't, *v.* Marston, Ex'r.

Where, by a valid will,. a person disposes of all his estate, both real and personal, he may afterward, by another instrument, which alone would be sufficient to pass personalty, revoke the former instrument, *pro tanto*, and it is not necessary that the second instrument should be executed with the same formalities required in the first devise.

No particular formality is required in a will of personal estate.

The declarations of a testator, at the time and delivery of such instrument, are admissible in evidence as a part of the *res gestæ*.

Appeal from a decree of the court of probate, disallowing a paper offered for probate as a codicil to the will of Samuel P. Marston, in these words: "Charlestown, Mass., this twenty-sixth day of March, in the year A. D. eighteen hundred and forty-two; witnesseth the subscriber, Samuel P. Marston, of Greenland, in the county of Rockingham, State of New-Hampshire, for divers good causes and valuable considerations hereunto moving me, I do promise to pay my nephew, Andrew B. Marston, son of John P. Marston, of Charlestown, the sum of fifteen hundred dollars, with interest thereon, or to his order, two years from date, subject to my pleasure of revoking the same. If not revoked by me, or by my order, nor requested to be given up by me from John P. Marston, to whom I shall deliver this, or any other person that may hold the same, then this obligation given to my nephew

above mentioned shall remain in full force and virtue, any disposition that I have made previously of my property to the contrary notwithstanding."

This instrument was signed by Samuel P. Marston, and attested by one witness.

The defendant is the executor of the will of said Marston, made March 7, 1842, disposing of all his real and personal estate, and which was duly proved and allowed in June, 1843.

An issue was framed and sent to the court of common pleas to determine whether the above instrument was executed by said Marston as a codicil to his last will and testament.

It appeared from the testimony of the subscribing witness, that, at the time of its date, S. P. Marston produced the paper (the original instrument) and asked him to witness it; that, observing him looking at the paper, he remarked that it was a family matter, that he was out of health, and was going to Havana, which was a sickly country; that said Marston signed the paper in his presence, and he thereupon signed as witness.

John P. Marston testified that on the morning when S. P. Marston left for Havana, he gave him the paper in question, in an envelope, sealed up, and told him to keep it two years unopened, and if he lived he should return, and if he did not return he might open it; that said S. P. Marston had been at his house about a fortnight, where he had been sick and confined to his bed a portion of the time, and that during his sickness he had been cared for at night by the witness, and by his wife and son (the appellant) during the day time. The testimony of John P. Marston was corroborated by that of his wife.

Samuel P. Marston died in May, 1843, and from the inventory of his estate it appeared that he left real estate to the amount of $6,600, and personal property to the amount of $3,257.71.

Marston *v.* Marston.

The jury found that the instrument was signed and executed by Samuel P. Marston, and that he intended that it should operate as a bequest to his nephew, (the appellant), to take effect in case of his decease.

*Emery & Bartlett,* for the appellant.

*Hackett,* for the executor.

PARKER, C. J.   It does not appear from the report that there was any objection at the trial to the admissibility of the testimony.   If there had been, it must have been overruled, the declarations of S. P. Marston being made at the time when he executed, and when he delivered the paper, and tending to show the character of those acts. It comes within the familiar principle which admits declarations as a part of the *res gestæ.*

The question whether this instrument can be admitted to probate, as a testamentary paper, and operate as a codicil to the will of S. P. Marston, is one of more difficulty.   The objection, if there be one, to admitting the paper to probate as a will of personalty, is, that there was at the time of its execution a will of S. P. Marston in existence, executed according to the requirements of the statute relating to wills of real and personal estate, which will remained upon his death, and has been proved and allowed. This paper cannot operate without affecting, to the same extent, the disposition of the property of the testator made by that will, and to that extent therefore operating substantially like a revocation of that will, and a new disposition of the property.

It is urged that the operation of this paper is not by way of revocation of the will, or any part of it, but as a supplement to it, leaving the provisions of the will to stand, but withdrawing a portion of the property from the operation of the residuary devise contained in it.

But it is not necessary to consider that, as we are of opinion that a valid will of real and personal estate, executed according to the requirements of the statute, may be revoked as to the personal estate, or a part of it, by any instrument in writing which would, if standing alone, be a good will of personal estate.

A will of real and personal estate may be revoked as to either, by any conveyance of the subject matter, by an instrument sufficient for the purpose, or even by a transfer of personal property without any writing. But the revocation in such cases results from the fact that the testator has parted with his title, and has nothing on which the will can operate. They do not determine how the power of revocation must be exercised, where the property still remains the property of the testator.

The statute at present in force enacts that " no will, or clause thereof, shall be revoked unless by some other valid will or codicil, or by some writing executed in the same manner, or by cancelling, tearing, obliterating, or otherwise destroying the same by the testator, or by some person by his consent and in his presence."

The statute recognizes, as one of the modes of revocation, some other valid will or codicil. May this paper be a valid will or codicil? It is certainly not a very formal will; but its lack of form will not prevent it from operating as a will, if it is found to be sufficient in substance. 4 N. H. 434, *Hunt* v. *Hunt;* 12 N. H. 371, *Gage* v. *Gage.* If this paper stood alone, it might be admitted as a valid will of personal estate, on the authorities just cited.

If, then, the previous will had been a will of personal estate only, this might, if necessary, have operated as a revocation of it. If the words of the statute, " or by some writing executed in the same manner," might be regarded as somewhat ambiguous, leaving it doubtful whether the writing thus referred to must be executed in the same manner as the will to be revoked, they do not

appear to qualify the previous words, "some other valid will or codicil," and any writing which may operate as a valid will or codicil would be sufficient for the purpose of revocation.

But the original will, being a will of real as well as personal estate, the next question is, may this be revoked as to the personal estate, or a part of it, by an instrument which, although it would operate as a sufficient revocation if the former will was of personalty alone, is not sufficient to operate as a revocation of a will of real estate.

That this instrument cannot revoke the original will as to the real estate seems to be clear. It is not a valid will to pass real estate, and cannot be set up against a will of real estate as an implied revocation. 14 Mass. 421, *Winslow's Appeal;* 3 Ves. 331, *Att'y Gen.* v. *Ward.*

But a will may be revoked *pro tanto.* Treating alienation as a revocation, it is said that it operates as a revocation *pro tanto* only. 4 Greenl. 341, *Carter* v. *Thomas.* This kind of partial revocation, if it is strictly a revocation, occurs daily. This, however, is not the only mode of revocation *pro tanto.* See 3 B. & P. 16, *Larkins* v. *Larkins;* 4 East 419, *Short* v. *Smith.* Another will, executed with the same formalities as the first, but disposing of only a part of the estate, would present a clear instance of a partial revocation as to real estate. And there is authority to show it to be equally true that there may be a revocation of a will of real and personal estate, so far as relates to the personal estate, by another instrument making a testamentary disposition of the personal estate. 1 Call. 479, *Glasscock* v. *Smither;* 14 Mass. 424, *Winslow's Appeal.* See, also, 3 Mer. 690, *Gallini* v. *Noble;* 5 Har. & J. 371, *Brown's Ex'r* v. *Tilden.* In *Brown* v. *Thorndike,* 15 Pick. 388, the testator having in his lifetime conveyed all the interest he had in real estate, it was held that his will, executed in a manner sufficient to pass real and personal estate, was revocable by any writing sufficient to revoke a will of personal estate.

But it is further objected, that if this instrument is admitted to probate, it may affect the real estate, because it may be necessary to sell the real estate to satisfy the legacy.

The instrument does not purport to charge the lands of the deceased with the payment, and, to avoid any such possibility, it may be admitted to a limited probate. In *Tappenden* v. *Walsh*, 1 Phill. 352, where a married woman had made a will without the consent of her husband, a probate was granted, limiting its operation to the separate property of the wife. See, also, 14 Mass. 424, where the court intimates that a limitation may be imposed, after probate, if the executors should apply for leave to sell real estate to pay legacies bequeathed in the codicil.

*Decree admitting the instrument to a limited probate not affecting real estate.*